UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

D'ASIA ISEBEL BAILEY,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

19-CV-6121-LJV
DECISION & ORDER

---

On February 14, 2019, the plaintiff, D'Asia Isebel Bailey, brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On October 11, 2019, Bailey moved for judgment on the pleadings, Docket Item 14; on January 8, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 17; and on January 29, 2020, Bailey replied, Docket Item 18.

For the reasons stated below, this Court grants Bailey's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

1

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   ALLEGATIONS

Bailey argues that the ALJ erred in three ways. Docket Item 14 at 2. First, she argues that the ALJ improperly evaluated medical opinions, resulting in a mental RFC unsupported by substantial evidence. *Id.* Second, she contends that the ALJ inappropriately relied on his own lay judgment and failed to develop the medical record in determining the physical RFC. *Id.* Third, she objects to the ALJ's assessment of her credibility. *Id.*

The Court agrees that the ALJ erred prejudicially with respect to Bailey's first two objections, and therefore remands the matter so that the ALJ can reconsider Bailey's mental and physical RFC. Because the credibility assessment concerns the same physical and mental impairments that the ALJ must reconsider on remand, the Court does not address Bailey's third objection at this time.

## II.   ANALYSIS

### A. Mental RFC

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted). Before an ALJ may deny a claimant's application, he must "confront the evidence in [the claimant's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). In addition, the ALJ should explain the weight assigned to the opinions of "not acceptable" medical sources—that is, "other sources" such as therapists—that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006). In other words, the ALJ must construct "an accurate and logical bridge" between the information in the record and the conclusion that the claimant is not disabled. *Thomas*, 826 F.3d at 961 (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)).

Here, Bailey alleges that although the ALJ purported to have assigned "great weight" to the opinion of consultative examiner Adam Brownfeld, Ph.D., the mental RFC

3

did not reflect the more restrictive limitations in that opinion.  Docket Item 14 at 17.  Bailey also contends that the ALJ improperly rejected the opinion of her treating therapist, Megan Cortese, M.S., LCAT ATR-BC (licensed and board-certified art therapist), while according inflated weight to the opinion of the state agency medical consultant, K. Lieber-Diaz, Ph.D.  *Id.*  Bailey claims that the ALJ's mental RFC determination therefore was not supported by substantial evidence.  *Id.*  This Court agrees.

### 1.  Dr. Brownfeld's Opinion

An ALJ may not reject or discount the opinion of a medical professional unless other competent medical evidence in the record supports that decision.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.  While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)); *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" (quoting *Wagner v. Sec. of Health & Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990))).

Here, the ALJ purported to have accorded "great weight" to the opinion of Dr. Brownfeld, who examined Bailey in September 2015.  Docket Item 5-2 at 61.  Dr.

Brownfeld opined that Bailey was "moderately limited in making appropriate decisions given [her] history of psychiatric hospitalizations" and "*markedly limited* in relating adequately with others and appropriately deal[ing] with stress." Docket Item 5-7 at 55-56 (emphasis added). He further opined that Bailey's psychiatric problems "may significantly interfere with [her] ability to function on a daily basis." *Id.* at 56.

The ALJ, in contrast, found that Bailey had the RFC to "perform light work[2] as defined in 20 CFR 404.1567(b) and 416.967(b), except she can *occasionally interact with coworkers and the general public*[ ] *and can perform low stress work* defined as work involving only occasional decision making." Docket Item 5-2 at 57 (emphasis added). The ALJ explained that "[w]hile [Dr. Brownfeld's] opinion found marked limits in relating with others and dealing with stress, treatment records since this evaluation show[ed] that [Bailey] ha[d] made improvements in functioning." *Id.* at 61. For instance, the ALJ noted, "since [Dr. Brownfeld's] evaluation, [Bailey had] started working part time, . . . was able to complete courses in college, . . . [and had experienced] no recent hospitalizations." *Id.*

As Bailey points out, however, "the record [did] not show [that she] had permanently improved to the extent [that] she was capable of competitive work." Docket Item 14-1 at 20. Indeed, the ALJ concluded simply that because the record seemed to suggest that Bailey was getting better, the marked limitations found by the medical professional may have gone away. But that is the precise sort of substitution

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b).

5

error that the courts have condemned. *See Balsamo*, 142 F.3d at 81 ("[I]t is well settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." (citation omitted)).

In fact, since Dr. Brownfeld's examination in September 2015, Bailey has continued to struggle with mental health issues. For example, according to the progress notes from Hillside Children's Center, Bailey's mother reported in March 2016 that Bailey had been cutting herself and was fired from her part-time job. Docket Item 5-10 at 38. Bailey also admitted to increased depression, feeling "irritable and reactive," and being "stressed and overwhelmed by school." *Id*. In April 2016, Bailey "felt they were out to get her" after she lost her job, and she reported heightened auditory hallucinations for the past three weeks. *Id*. at 43. Bailey also suffered "mood lability and irritability"—her boyfriend said that Bailey tried to choke him. *Id*. at 43, 46.

And while Bailey's mental condition appeared to have improved some since June 2016, *see*, *e.g.*, *id*. at 76, 84, those improvements did not last. In May 2017, for example, pediatrician Howard R. Foye, M.D., observed that Bailey had a recent panic attack, myoclonic seizure episodes that occurred about twice per week, and bipolar disorder. Docket Item 5-9 at 281. Dr. Foye further opined that "[Bailey's] presentation [at the visit] suggest[ed] persistence of a mental health condition." *Id*.

As the Second Circuit has observed, "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . [and so] it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (second alteration in original) (quoting

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).  In discounting certain aspects of Dr. Brownfield's opinion, that appears to be exactly what the ALJ did here.

      Nor did Bailey's part-time job and college coursework undermine Dr. Brownfeld's opinion about her marked and moderate limitations.  Dr. Brownfeld well knew that Bailey attempted to attend college, Docket Item 5-7 at 55, but he still opined that her mental impairments markedly limited her ability to interact with others and deal with stress, *id.* at 56.  Dr. Brownfeld's opinion, sensibly construed in context then, shows that he believed Bailey to have these limitations notwithstanding her efforts to go to school.  *See Wilson v. Colvin*, 213 F. Supp. 3d 478, 488 (W.D.N.Y. 2016) ("The ALJ asserted that certain mundane activities . . . undermined [the doctor's] opinion.  However, [the doctor] was aware that [the plaintiff] attempted to do housework. . . .  Thus, a reasonable reading of [the] opinion is that [the doctor] took these activities into account and still opined that [the plaintiff] could not do . . . [a certain level of] work.").  More importantly, Bailey's part-time work and college experience consisted of "failed attempts."  Docket Item 14-1 at 20.  Bailey had been fired from her part-time jobs at least three times.  Docket Item 5-10 at 44, 110.  While the ALJ duly noted that Bailey passed four out of five college courses in the fall of 2016, Docket item 5-2 at 58, he ignored that Bailey nevertheless felt "overwhelmed by school" and "was not sure if she was going back to college," Docket Item 5-10 at 38, 74.  Stated differently, the ALJ failed to reconcile Bailey's struggles at work and in college with his conclusion that the marked limitations about which Dr. Brownfeld opined were overly restrictive.

7

### 2. Ms. Cortese's Opinion

In addition to acceptable medical opinions, an ALJ also may consider the opinions of "other sources"—such as therapists—but is "free to discount" such opinions "in favor of the objective findings of other medical doctors." *Genier v. Astrue*, 298 F. App'x 105, 108-09 (2d Cir. 2008) (summary order). Nevertheless, an ALJ should adequately explain why he rejected an opinion from such a source if it is significantly more favorable to the plaintiff and may well "have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f). 20 C.F.R. § 404.1527(c) enumerates several factors in guiding the ALJ's reasoning:

> [1] the length and frequency of the treating relationship; [2] the nature and extent of the relationship; [3] the amount of evidence the source presents to support his or her opinion; [4] the consistency of the opinion with the record; [5] the source's area of specialization; [6] and any other factors the claimant brings to the ALJ.

*Tolliver v. Astrue*, 2013 WL 100087, at *3 (W.D.N.Y. Jan. 7, 2013) (quoting *Drennan v. Astrue*, 2012 WL 42496, at *3 (W.D.N.Y. Jan. 9, 2012)). Using those factors to articulate the ALJ's reasoning is more than just a good idea. In *Tolliver*, for example, the court remanded when the ALJ failed to use those factors to explain why he assigned little weight to the opinion of a nurse practitioner who saw the patient far more frequently than did the treating physician. 2013 WL 100087, at *3.

Here, Bailey's treating therapist, Ms. Cortese, found that Bailey was either "unlimited or very good" or "limited but satisfactory" with respect to the mental abilities and aptitudes needed to perform unskilled, semiskilled, and skilled work, such as understanding and carrying out instructions, maintaining regular attendance, and dealing with work stress. Docket Item 5-10 at 147-48. Based on these findings and her

clinical judgment, she opined that Bailey had the following functional limitations: moderate restrictions in "activities of daily living" and "maintaining social functioning," marked difficulties in "maintaining concentration, persistence[,] or pace," as well as one or two "episodes of decompensation within [a] 12[-]month period, each of at least two weeks['] duration." *Id.* at 149. Ms. Cortese also anticipated that Bailey would miss work about four days per month, opining that Bailey could not "engage in full-time competitive employment on a sustained basis." *Id.* at 150.

The ALJ assigned only "little weight" to Ms. Cortese's opinion. Docket Item 5-2 at 62. The ALJ dismissed the opinion as "internally inconsistent" because "the significant [functional] limitations noted [were] not consistent with [her] findings . . . noted above." *Id.* The ALJ also found that "[t]he record, including mental health records, as well as [Bailey's] part[-]time work, and the ability to take and pass college courses further contradict[ed] Ms. Cortese's opinion." *Id.*

But in reaching his conclusion, the ALJ failed to explicitly address either "the length and frequency" or "the nature and extent" of the treating relationship. *Tolliver*, 2013 WL 100087, at *3. Ms. Cortese treated Bailey for almost a year—from September 2016 until at least July 2017. Docket Item 5-10 at 105, 137. The ALJ correctly noted that Bailey missed many appointments with Ms. Cortese. Docket Item 5-2 at 62. Still, compared to Dr. Brownfeld (who examined Bailey only once) or Dr. Lieber-Diaz (who only reviewed some of Bailey's treatment records), *see id.*, Ms. Cortese had seen Bailey more often and therefore was in a better position to provide "a detailed, longitudinal picture of [Bailey's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Estrella*, 925 F.3d at 98 ("We have frequently 'cautioned that ALJs should not rely

9

heavily on the findings of consultative physicians after a single examination.'  This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (per curiam)); *Tolliver*, 2013 WL 100087, *3 ("[S]uch a familiar relationship may warrant apportioning more weight to [the nurse practitioner] than [the] consultative examiner . . . , on whom [the ALJ] heavily relied.").

The ALJ also erred in dismissing Ms. Cortese's opinion as "internally inconsistent" without further explanation.  Docket Item 5-2 at 62.  Bailey's ability to perform certain work-related activities occasionally does not necessarily mean that she had no limitations in her "ability to function independently, appropriately, effectively, and *on a sustained basis*," Docket Item 5-10 at 149 (emphasis added).  In other words, despite Bailey's ability to work on occasion, her moderate limitations in daily living and social functioning and her episodes of decompensation still could reasonably have led Ms. Cortese to anticipate that Bailey would miss work about four days per month and conclude that she could not "engage in full-time competitive employment *on a sustained basis.*"  *Id.* at 150 (emphasis added).  There was nothing internally inconsistent about that, and the ALJ erred in suggesting otherwise.

Similarly, the ALJ did not explain how "[t]he mental health records, . . . [Bailey's] part[-]time work, and . . . college course contradict[ed] Ms. Cortese's opinion."  Docket Item 5-2 at 62.  In fact, Ms. Cortese's findings that Bailey suffered episodes of decompensation corresponded with those progress notes, which recorded Bailey's intermittent exacerbations of symptoms.  *See, e.g.*, Docket Item 5-10 at 38, 43, 281.

10

Likewise, Bailey's experience at her part-time job and in college—which, as discussed above, included countless struggles—actually supported Ms. Cortese's opinion that Bailey's moderate to marked functional limitations would restrict her from full-time competitive employment, despite her mental ability to handle certain work-related activities.

Furthermore, the ALJ failed to situate Ms. Cortese's opinion in tandem with the opinions of Dr. Brownfeld and Dr. Lieber-Diaz when assessing "the consistency of [Ms. Cortese's] opinion with the record." *Tolliver*, 2013 WL 100087, at *3. And had the ALJ done so, he may well have concluded that Ms. Cortese's opinion that Bailey would miss work four days per month was consistent with Dr. Brownfeld's opinion that Bailey's psychiatric problems "may significantly interfere with [her] ability to function on a daily basis," *id.* at 56. Or he may have concluded that Ms. Cortese's finding that Bailey was moderately restricted in maintaining social functioning was consistent with Dr. Brownfeld's finding that Bailey was markedly limited in relating adequately with others and dealing appropriately with stress. Absent any discussion of these potential consistencies, the ALJ's error requires remand. *See Meyer v. Berryhill*, 2019 WL 3457219, at *5 (W.D.N.Y. July 31, 2019) (remanding where the ALJ's reasoning did not "adequately 'confront' the inconsistency" between the opinions of treating physician and physical therapist (quoting *Thomas*, 826 F.3d at 961)).

Finally, the ALJ's rejection of Ms. Cortese's opinion inured to Bailey's detriment. A vocational expert testified that if Bailey "would be off task 20 percent of the time . . . and/or miss work up to four days a month," she would not be able to find work in the national economy. *See* Docket Item 5-2 at 95. So the Court cannot say that the ALJ's

error in evaluating Ms. Cortese's opinion was harmless. *Cf. Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining to remand where "application of the correct legal principles to the record could lead [only to the same] conclusion" (citation omitted)).

In sum, the ALJ's unsupported rejection of Ms. Cortese's opinion added to his error in prejudicially determining Bailey's mental RFC. The Court therefore remands so that the ALJ can reevaluate the medical opinions and formulate Bailey's mental RFC accordingly.

### B. Physical RFC

The Court also agrees that the ALJ improperly relied on his own lay judgment in determining Bailey's physical RFC. "Although the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2295400, at *2 (W.D.N.Y. May 30, 2019) (quoting *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)). Thus, "where the transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitation . . . , the ALJ [generally] must recontact [a treating physician], order a consultative examination, or have a medical expert testify at the hearing." *Skupien v. Colvin*, 2014 WL 3533425, at *6 (W.D.N.Y. July 16, 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 913 (N.D. Oh. 2008)); *see also Thomas*, 2019 WL 2295400, at *2 (explaining that "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence" (quoting *House*, 2013 WL 422058, at *4)).

Here, the ALJ found that Bailey's cutaneous lupus constituted a "severe impairment[ ]" but still determined that Bailey could perform "light work." Docket Item 5-

2 at 55, 57. In making this determination, the ALJ assigned "very little weight" to the opinion of pediatrician Kate Cicozi, M.D., who examined Bailey on July 20, 2017, for "muscle pain in her shoulders, upper back, and upper arms, along with numbness." *Id.* at 60. Dr. Cicozi noted that Bailey "was in extreme pain [at the visit], requiring [a] wheelchair to get around." Docket item 5-9 at 332. She also signed a note that restricted Bailey from returning to work until cleared by a physician. *Id.* at 333. The ALJ discounted Dr. Cicozi's opinion because "it was very limited in scope, did not outline specific functional limitations, and [was] no longer relevant since [Bailey was] working part time." Docket Item 5-2 at 60.

Having rejected Dr. Cicozi's opinion, the ALJ was left with no medical opinion—not even a consultative examiner's—on which to base Bailey's physical RFC. And in the absence of any competent medical opinions supporting his physical RFC determination, the ALJ necessarily relied only on his own lay judgment in determining that Bailey could perform "light work" as opposed to a different exertional level. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data.").

Moreover, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'" *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). For example, having rejected

13

Dr. Cicozi's opinion because it referred only to a temporary restriction, the ALJ could have contacted Dr. Cicozi to ask whether Bailey's muscle pain would lead to any permanent limitations.  Similarly, having apparently concluded that Bailey suffered from cutaneous lupus, the ALJ was required to solicit a medical statement opining about the severity of that condition and its effect on Bailey's functioning.  More specifically, the ALJ appears to have credited the finding of rheumatologist Christopher Palma, M.D., that Bailey may have cutaneous lupus.[3]  Docket Item 5-2 at 60.  But that determination was neither conclusive nor specific as to the limiting effects of Bailey's condition.  Docket Item 5-7 at 94-95.  So the ALJ should have contacted Dr. Palma—or the dermatologist to whom Bailey was referred for additional testing[4]—for more information.

"[T]he absence of a properly grounded RFC constitutes legal error that requires remand regardless of any underlying raw data."  *Thomas*, 2019 WL 2295400, at *2.  Here, the ALJ's use of his own lay judgment to formulate Bailey's physical RFC constituted such an error.  The Court accordingly remands so that the ALJ can develop the medical record and ground the physical RFC determination in a medical opinion or opinions in the record.  *See Perkins v. Berryhill*, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the

---

[3] On July 28, 2017, Dr. Palma found that Bailey had a "low positive ANA blood test but no other evidence of lupus."  Docket Item 5-7 at 94.

[4] Unsure about what caused Bailey's muscle pain, Dr. Palma suggested further testing to determine whether Bailey had cutaneous lupus.  Docket Item 5-7 at 94-95.  On August 9, 2017, pediatrician Grace Elizabeth Black, M.D., referred Bailey to a dermatologist, Docket Item 5-9 at 361; however, as of September 27, 2017, Bailey had not yet scheduled an appointment, *id.* at 384.

Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.").

### C. Bailey's Credibility

Finally, Bailey argues that the ALJ failed to properly evaluate her credibility. Docket Item 14 at 26.[5] The ALJ found that Bailey's impairments "could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence[,] and limiting effects of these symptoms" were not credible because "they [were] not entirely consistent with the medical evidence and other evidence in the record." Docket Item 5-2 at 59. The Commissioner contends that this statement sufficiently explained the ALJ's partial rejection of Bailey's testimony. Docket Item 17 at 23.

Bailey's credibility concerns the same mental and physical impairments that the ALJ must reconsider after reevaluating certain medical opinions and developing the record. The Court cannot rely on the ALJ's improper evaluation of the medical evidence to assess his credibility determination, so it declines to address this issue now. *See Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

---

[5] Bailey also argues that the ALJ failed to "make any actual credibility assessment" of her mother. Docket Item 14 at 28. The Commissioner does not respond to this argument.

15

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Bailey's motion for judgment on the pleadings, Docket Item 14, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:      July 21, 2020
            Buffalo, New York

                                            */s/ Hon. Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE